UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

TIMOTHY OSOWSKI,

    Plaintiff,

Case No. 25-cv-00725

v.

MICHAEL R. BAXTER, and
EDMOND R. BAXTER,

    Defendants.

## PLAINTIFF'S BREIF IN OPPOSITION TO MOTION TO DISMISS

The Plaintiff, Timothy Osowski, through his counsel, submits this Brief in Opposition to Defendants, Michael and Edmond Baxter's, Motion to Dismiss in the above-captioned matter.

### SUMMARY POSITION

Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. Defendants' argument that the relevant events occurred in Iowa ignores the central issue: the Plaintiff received and relied on Defendants' representations while in Wisconsin and suffered economic injury here. Courts addressing venue in misrepresentation-based claims consistently focus on the location where the misstatements were received and relied upon—not merely where the defendant acted. Moreover, the Plaintiff executed the "Vessel Survey Agreement" in Wisconsin, and all related communications, representations, and injuries were centered in

1

Wisconsin. Accordingly, venue is proper in this District, and the Defendants' motion should be denied in its entirety.

## FACTUAL BACKGROUND

This dispute arises out of the inspection and subsequent purchase of a 2006 34' Sea Ray Sundancer vessel (the "Vessel") in July of 2024. (Dkt. 1, Compl. ¶ 7.) The Plaintiff, Mr. Timothy Osowski ("Mr. Osowski"), is a Wisconsin resident residing at 1114 Crestview Drive, Port Washington, WI 53074. (Osowski Aff. ¶ 1.) In June of 2024, Mr. Osowski became interested in purchasing a vessel for use in Wisconsin and began searching for a vessel to purchase from his home in Wisconsin. (Osowski Aff. ¶ 2.)

In connection with this search, on June 30, 2024, Mr. Osowski viewed an online advertisement for the Vessel from his home computer in Wisconsin. (Osowski Aff. ¶ 3.) After viewing the advertisement, Mr. Osowski became interested in purchasing the Vessel, however, the Vessel was located in Clinton, Iowa. (Osowski Aff. ¶ 4.) As a result, Mr. Osowski would not be able to personally inspect or otherwise view the Vessel prior to purchase. (Osowski Aff. ¶¶ 4-5.) Due to Mr. Osowski's inability to physically inspect the Vessel, it was particularly important that a credentialed, reputable, and experienced marine surveyor be retained to inspect the Vessel prior to purchase. (*Id.*)

To facilitate the purchase, Mr. Osowksi searched various online databases from his home in Wisconsin, including the National Association of Marine Surveyors ("NAMS") and the Society of Accredited Marine Surveyors ("SAMS") who maintain lists of credentialed surveyors. (Osowski Aff. ¶ 6.) During Mr. Osowski's search, he located the Defendant, Michael Baxter, who, according to the online database, was certified through NAMS since 1988. (Osowski Aff. ¶ 7.) Mr. Oskowski carefully reviewed Michael Baxter's credentials from his computer in Wisconsin which indicated

2

that Michael Baxter was an experienced marine surveyor certified in hull and machinery assignments. (Dkt. 1, Compl. at ¶¶ 13-14.)

After determining that Michael Baxter's credentials and background were suitable, Mr. Osowski called Michael Baxter on July 8, 2024. (Osowski Aff. ¶ 8; Ex. A, call log.) During this call, Mr. Osowski explained to Michael Baxter that he desired to purchase the Vessel for use in Wisconsin, and that Mr. Osowski could not physically observe the Vessel due to his location in Wisconsin. (Osowski Aff. ¶ 9.) After discussing the inspection, Mr. Osowski desired to retain Michael Baxter, who agreed to perform the inspection, but indicated that his son, Edmond Baxter would assist him. (Dkt. 1, Compl. at ¶¶ 15, 20.) Notably, Edmond Baxter is not NAMS certified, and upon information and belief, was a trainee at all times relevant to the present dispute. (*Id.* at ¶ 24; Osowski Aff. ¶¶ 24-25.) At no point did Michael Baxter disclose that he would not be physically present during the inspection and that no credentialed surveyor would physically inspect the Vessel. (*Id.*)

To facilitate the inspection, Edmond Baxter sent a text message to Mr. Osowski requesting his Wisconsin address. (Osowski Aff. ¶ 10; Ex. B.) Within an hour Mr. Osowksi provided his address to Edmond Baxter who then sent a Survey Agreement (the "Agreement") to Mr. Osowski in Wisconsin via email. (*Id.*) Mr. Osowski reviewed the Agreement in Wisconsin and executed the Agreement in Wisconsin. (Osowski Aff. ¶ 11; Ex. C.) Subsequently, on or around July 9, 2024, Mr. Osowski sent the signed Agreement back to the Defendants. (*Id.*)

After receiving the executed Agreement, the Defendants sent additional documentation relating to the Vessel, including records of prior service or repairs, to Mr. Osowski in Wisconsin. (Osowski Aff. ¶ 12; Ex. D.) The following day, on July 10, 2024, Edmond Baxter performed the inspection of the Vessel. (Osowski Aff. ¶ 13.) Michael Baxter did not attend the inspection. (Dkt.

3

1, Compl. at ¶ 24.) Although Michael Baxter had previously indicated that Edmond Baxter would assist with the inspection, it was never disclosed to Mr. Osowski that Michael Baxter himself would not be present, and that no certified surveyor would be present at the time of inspection. (*Id.*)

During the inspection, Edmond Baxter repeatedly texted and called Mr. Osowski in Wisconsin to provide his impressions and findings in real time. (Osowski Aff. ¶¶ 14-16; Ex. B.) In total, nearly 33 pages of text messages were exchanged between Edmond Baxter and Mr. Osowski in Wisconsin relating to the inspection, including the following:

- On 7/10/24, during the inspection, Edmond Baxter forwarded service invoices and other documentation relating to the Vessel for Mr. Osowski's review. (Osowski Aff. ¶ 10; Ex. B at p. 4.)
- Edmond Baxter sent at least eight photos depicting the condition of the Vessel during the inspection to Mr. Osowski in Wisconsin. (*Id.* at pp. 6-7.)
- Edmond Baxter represented that the Vessel was an "Overall clean boat and well taken care of" during the inspection via text message to Mr. Osowksi in Wisconsin. (*Id.* at p. 5.)
- During the inspection, Edmond Baxter sent text messages to Mr. Osowski describing the extent of delamination or moisture conditions present and represented that the moisture was "very localized, as in moisture only present in half of the yellow circle [depicted on a photo texted to Mr. Osowski]." (*Id.* at p. 8.)
- During the inspection, Edmond Baxter texted Mr. Osowski in Wisconsin representing that "Cockpit gauges, engine compression, leaked down, oil pressure, ECMs, fault codes, AC unit, the drive operation checked GOOD (cold & operating temp)[.]" (*Id.* at p. 9.)
- During the inspection Edmond Baxter texted Mr. Osowski in Wisconsin that "There are only two small areas of concern on the hull under the waterline where the gelcoat has scraped off, resulting in very localized minimal moisture." Edmond Baxter also represented that the Vessel was "checked for water tightness, and it is indeed watertight" (*Id.*)

4

- Prior to issuing the Report, Edmond Baxter texted Mr. Osowski in Wisconsin that "IMHO If you could snag this boat for under 80,000...I would consider it an investment !!!" (*Id.* at p. 12.)
- Prior to issuing the Report, Edmond Baxter texted Mr. Osowksi in Wisconsin that, "If you're trying to slash the price, it will be hard to justify." And that the Vessel was "AMAZING" (*Id.* at p. 16.)
- Additionally, prior to issuing the Report, Edmond Baxter texted Mr. Osowski in Wisconsin representing that his father, Michael Baxter had also physically inspected the Vessel stating, "the physical hull condition and moisture level is THE BEST my father and I both have seen. It's definitely lived a spoiled life so far." (*Id.* at p. 17.)
- Prior to issuing the Report, Edmond Baxter texted Mr. Osowski in Wisconsin, "Consider me like your go to expert for your boat [a]nd resource to help delineate all of the information in the report..." (*Id.* at p. 18.)

Additionally, Edmond Baxter had approximately *twenty telephone calls* with Mr. Oswoski in Wisconsin to discuss the Vessel's condition. (Osowski Aff. ¶ 16; Ex. E, call log.) Michael Baxter also had approximately three additional telephone calls with Mr. Osowski in Wisconsin relating to the Vessel. (Osowski Aff. ¶ 8; Ex. A, call log.)

Finally, on July 12, 2024, the Defendants emailed Mr. Osowski a copy of the Report of Survey (the "Report") in Wisconsin, capturing their inspection findings. (Osowski Aff. ¶ 19; Ex. F.) Notably, the Report did not identify any major defects or damage. (*Id.*) In fact, the Report affirmatively indicated that the Vessel was in good working order with a present market value of $127,689.00. (*Id.*; Dkt. 1, Compl. at ¶¶ 27-29.) Additionally, although Michael Baxter was not present at the inspection and did not personally inspect the Vessel, he executed the Report and attested to its accuracy. (Dkt. 1, Compl. at ¶ 30.) That same day, on July 12, 2024, Mr. Osowski directed payment of the survey fee, via Zelle, from his Wisconsin bank account. (Osowski Aff. ¶ 20.)

5

Relying on the representations made by the Defendants, and after thoroughly reviewing the Report in Wisconsin, on July 15, 2024, Mr. Osowski purchased the Vessel for $75,000.00. (Osowski Aff. ¶ 21.) At the time of closing, Mr. Osowski did not have knowledge of any defects other than the limited defects identified in the Report. (Dkt. 1, Compl. at ¶¶ 33-35.)

After closing, the Vessel was transported from Iowa to Wisconsin by a Wisconsin-based transport company. (Osowski Aff. ¶ 22.) Upon delivery, substantial undisclosed defects were discovered including, but not limited to, significant and conspicuous hull damage, electrical issues relating to the helm control panel, mold, mildew, staining, and sewage overflow odor. (Dkt. 1, Compl. at ¶¶35-39.) Ultimately, the Report and its recommendations do not accurately capture the condition of the Vessel or its value. (*Id.*)

As a result of the undisclosed defects, Mr. Osowski has sustained substantial damages in Wisconsin including the costs of additional inspections and repairs resulting in the current litigation. (*Id.* at ¶¶ 42-44.)

## LEGAL STANDARD

When evaluating a motion to dismiss for improper venue pursuant to Rule 12(b)(3), courts accept all factual allegations in the complaint as true unless contradicted by affidavit. *Est. of Moore v. Dixon*, 460 F. Supp. 2d 931, 935 (E.D. Wis. 2006). Courts may also look beyond the four corners of the complaint and may consider affidavits when resolving venue motions. *Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d 932, 943 (E.D. Wis. 2019)("When ruling on a Rule 12(b)(3) motion to dismiss for improper venue, the court may consider facts outside the complaint."). Here, the Defendants submitted no affidavits. Accordingly, the Court must presume that the factual allegations of the Complaint are accurate and may also look to the Plaintiff's affidavit to determine whether this action is properly venued.

Venue is governed by 28 U.S.C. § 1391, which states that venue is appropriate in:

1. A judicial district where any defendant resides, if all defendants reside in the same state;
2. A judicial district where a substantial part of the events or omissions giving rise to the claim occurred; or
3. If no district is otherwise appropriate, any judicial district in which any defendant is subject to the court's personal jurisdiction.

28 U.S.C. § 1391. In this case, only subsection two is at issue—whether a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction.

In determining whether a substantial part of the events or omissions occurred within the jurisdiction, courts "look[] not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action." *Robillard v. Knutson*, No. 24-CV-1077-JPS, 2025 WL 1895986, at *6 (E.D. Wis. July 9, 2025)(quoting *Master Tech Prods.*, 181 F. Supp. 2d at 914 (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994))(rejecting defendant's arguments that only defendant's contacts are relevant); *See also Heaton Cont. Mfg., LLC v. Noble.com, Inc.*, No. 20-CV-1875, 2021 WL 2188359, at *4 (E.D. Wis. May 28, 2021)(same).

The key factor is whether a "close nexus" between the events and the claims asserted exists. *Dixon*, 460 F. Supp. 2d at 936. Courts have further explained that it is sufficient to establish that the events in the forum district "were part of the historical predicate for the instant suit." *Id.* (quoting *Master Tech*, 181 F. Supp. 2d at 914). Under this standard, several districts may qualify as appropriate venues. However, the Plaintiff's chosen forum is not disqualified merely because another venue has more contacts. *Dixon*, 460 F. Supp. 2d at 936 (citing *Rich-Mix Products, Inc. v. Quickrete Companies, Inc.*, 1999 WL 409946 at *1 (N.D. Ill 1999)).

Finally, courts are split on which party bears the burden of proof in a venue challenge, with some courts treating venue as an affirmative defense, requiring defendants to demonstrate that

7

venue is improper. *See MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 915 (N.D. Ill. 2010). Others, including secondary sources, argue the plaintiff bears the burden. *Id.* (citing Wright and Miller. *Federal Practice & Procedure* § 3826 (2d ed.1986))(stating that the better view is that the burden of establishing venue is on the plaintiff).[1] Regardless of which party bears the burden of proof, the Plaintiff has satisfied the applicable standard and venue in this District is appropriate as set forth below.

## ARGUMENT

### I. A Substantial Portion of the Events Giving Rise to the Plaintiff's Claims Occurred in This District

#### A. Tort Claims Are Properly Venued in This District

As the Defendants acknowledge, the Plaintiff's complaint is grounded in allegations of misrepresentation. (*See generally* Dkt. 1, Compl.) Specifically, five of the seven claims arise under Wisconsin law and involve allegations of intentional misrepresentation, negligent misrepresentation, and statutory misrepresentations under Wis. Stats. §§ 100.18, 895.446, and 943.20. (*Id.* at ¶¶ 50-77.) As both parties agree, venue is determined by whether there is a sufficient nexus between the *claims* at issue and the contacts with the forum. *See Dixon*, 460 F. Supp. 2d at 936. Thus, the analysis turns not on formulaic recitation of contacts, but on the relationship between those contacts and the claims alleged. Despite this fact, the Defendants' brief fails to provide any analysis of the venue standard applicable to misrepresentation claims. This is because a misrepresentation claim is properly litigated in the forum in which the representation is received and acted upon—in this case, the Eastern District of Wisconsin.

---

[1] *Compare In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir.1998) (stating that venue is presumed to be proper in the district in which the case is filed, and that the party challenging venue bears the burden of showing that the district chosen by plaintiff is improper), *with Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir.1969) (stating that the burden of establishing venue is on the plaintiff).

8

Where misrepresentation claims are alleged, this District clarified that:

> [N]umerous courts in this circuit have examined 'venue under section 1391(a)(2) in misrepresentation and fraud cases [and] have held that venue is proper in the district to which a document containing the misrepresentation at issue was sent.'[2]

*Dixon*, 460 F. Supp.2d at 936 (quoting *Mercantile Capital Partners v. Agenzia Sports, Inc.*, 2005 WL 351926 at *5 (N.D.Ill.2005); *See also Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel Co., Inc.*, 2005 WL 1983846 at *7 (N.D.Ind.2005)(finding venue proper in plaintiff's home state for fraud claim because plaintiff's reliance and detrimental effects of reliance occurred there); *Print Data Corp. v. Morse Fin., Inc.*, 2002 WL 1625412, at *6 (D.N.J.2002)(venue appropriate in the district where fraudulent statements were sent and where the plaintiffs relied on the statements).

Moreover, electronic communications directed into the forum state have also been held sufficient to establish venue with respect to misrepresentation claims. *Vanlaanen v. Cornerstone Mortg. LLC*, No. 16-C-757, 2016 WL 6833976, at *3 (E.D. Wis. Nov. 18, 2016))("VanLaanen alleges fraudulent misrepresentation occurred through email correspondence while he was in Wisconsin. He also asserts he was ultimately defrauded of his property in this judicial district . . . VanLannen has fulfilled his burden of providing that venue is proper in this district.").

---

[2] Notably 28 U.S.C. § 1391 was amended in 2011. In prior versions, the language permitting venue based on a "substantial part of the events or omissions giving rise to the claim" was contained in § 1391(a)(2) as opposed to the current § 1391(b)(2). *See* 28 U.S.C.A. § 1391 (West)(2011). Thus, the *Dixon* court's analysis references a different subsection, but the contents of that version are materially equivalent. The full text of the prior version of § 1391(a) provides: "(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, *(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated,* or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *Id.* (emphasis added).

9

Much like the above cases, in the present litigation, each representation relevant to Mr. Osowski's claim was received in Wisconsin and was acted upon within this District. As the Complaint alleges:

> Michael R. Baxter made false, misleading, and untrue statements regarding the Vessel Survey Agreement, the survey to be undertaken, and the Report, including but not limited to the following: that he would survey and/or inspect the Vessel in accordance with the acceptable industry standard of practice for NAMS certified marine surveyors; that he would accurately report the condition of the Vessel; that he would accurately value the Vessel; and that he would view the Vessel personally.

(Dkt. 1, Compl. ¶ 51.)[3] Mr. Osowski received each statement relating to the Vessel Survey Agreement in Wisconsin, received the Report in Wisconsin, and communicated with Edmond Baxter regarding his inspection of the Vessel from Wisconsin. (*See* Osowski Aff. ¶¶ 8-12, 14-19.) Finally, Mr. Osowski's reliance and resulting economic harm, including payment to Defendants, and subsequent repair expenses, were likewise suffered in Wisconsin. (*Id.* at ¶¶ 20-21, 26.)

Based on the foregoing, a substantial portion of the events giving rise to the tort claims occurred within the Eastern District of Wisconsin rendering venue appropriate before this Court.

### B. The Breach of Contract Claim is Properly Venued in the Eastern District of Wisconsin

In addition to the above tort claims, the Plaintiff has also alleged a single claim for breach of contract. (Dkt. 1, Compl. at ¶¶ 46-49.) In evaluating this claim, the Defendants allege that this court must focus solely on where the contract at issue was performed. This is incorrect. Although the place of performance is a consideration, courts also look to other factors such as where the contract was negotiated and executed, where payment of the contract price occurred, and where

---

[3] Materially identical allegations are also recited in Paragraphs 57, 64, 69, and 74 as the basis for the Plaintiffs claims for intentional misrepresentation/theft in violation of Wis. Stats. §§ 895.446 & 943.20(1)(d), Wisconsin common law intentional misrepresentation, Wisconsin common law strict responsibility misrepresentation, and Wisconsin common law negligent misrepresentation. (Dkt. 1, Compl. at ¶¶ 57, 64, 69, 74.)

related communications occurred. *See Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015); *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, No. 07-CV-1394, 2008 WL 5423553, at *3 (N.D. Ill. Dec. 29, 2008)(holding that venue is proper where a contract was signed in the forum and communications relating to the performance of the contract occurred in the forum).

Additionally, courts within the Seventh Circuit have held that payment and review of contract documents combined with communications directed at the forum are sufficient to satisfy venue requirements. *Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 939–40 (N.D. Ill. 2011)("Numerous email and telephonic communications, as well as contract documents and prospectuses, are alleged to have been directed to Schwarz at his home in the Northern District of Illinois.. . . These circumstances are more than sufficient to establish venue in this District under § 1391(b)(2)").

In this case, Mr. Osowski negotiated and executed the Vessel Survey Agreement in Wisconsin and paid for the underlying services in Wisconsin. (Osowski Aff. ¶¶ 11, 20.) All related communications, including the final Report, were directed to Mr. Osowski in Wisconsin. (*Id.* at ¶¶ 12-19.) Further, while the physical inspection occurred in Iowa, performance of the contract involved not only the inspection but also numerous communications between the parties emanating from or directed at Wisconsin including at least 33 pages of text messages directed to Mr. Osowski in Wisconsin and at least 23 phone calls between the Defendants and Mr. Osowski in Wisconsin discussing the Vessel's condition. (Osowski Aff. ¶¶ 8, 10, 16; Exs. A, B, & E.) Not only are these contacts substantial, but they are also interwoven with the performance of the contract—namely, the purpose of the contract was to determine the condition and value of the Vessel, thus

11

communications relating to these determinations during the inspection are highly material to the breach of contract claim.

Moreover, these communications are of particular import in this case where the breach of contract allegations involve Michael Baxter's failure to personally and properly inspect the Vessel. (*See* Dkt. 1, Compl. at ¶ 48.)[4] As set forth in the Complaint, Michael Baxter communicated with Mr. Osowski in Wisconsin indicating that he was a certified experienced surveyor willing to inspect the Vessel. (*Id.* at ¶¶ 11-16.) Despite these representations, Michael Baxter was not physically present during the inspection. (*Id.* at ¶ 24.) Instead, the inspection was carried out by Michael Baxter's uncertified son, Edmond Baxter. (*Id.* at ¶¶ 23-24.) Neither Defendant disclosed these facts to Mr. Osowski. (*Id.* at ¶ 24.) Instead, Edmond Baxter sent text messages to Mr. Osowski, in Wisconsin, falsely indicating that Michael Baxter was also present during the inspection or had observed the physical conditions of the Vessel. For example, Edmond Baxter texted Mr. Osowski that, "the physical hull condition and moisture level is THE BEST *my father and I both have seen*." (emphasis added). (Osowski Aff. ¶ 18.)

Ultimately, the performance of the contract is interwoven with the messages directed to Mr. Osowski in Wisconsin as these communications actively mislead the Plaintiff about the circumstances of the inspection and the condition of the Vessel during the inspection. Where numerous messages during and concerning performance of the contract were sent to Wisconsin, the Survey Agreement was reviewed and executed in Wisconsin, the final Report was delivered to

---

[4] The Complaint alleges that Michael Baxter breached the Agreement by "failing to attend the survey; failing to supervise his son and trainee, Edmond R. Baxter; by signing a report he did not author; by inaccurately representing the condition of the Vessel; and inaccurately valuing the Vessel[.]" (Dkt. 1, Compl. ¶ 48.)

12

Wisconsin, and payment was made from Wisconsin, a substantial portion of the events giving rise to the breach of contract claim occurred within this District and venue is proper.

### D. The Defendants' Misstate Applicable Law in An Effort to Change Venue

Under a holistic review of all relevant events giving rise to the claims at issue, it is clear that substantial events occurred within the Eastern District of Wisconsin. In an effort to avoid this conclusion, the Defendants allege that, "the court must focus on the activities of the defendant, not those of the plaintiff." (Def. Br. p. 2.)(citing *PKWare, Inc. v. Meade*, 79 F. Supp.2d 1007, 1015 (E.D. Wis. 2000)). However, this position conflates personal jurisdiction and venue standards and has been rejected by recent authorities within the Seventh Circuit.

Specifically, this District expressly rejected the Defendants' position earlier this month in the *Robillard* case holding that, "Indeed, "[t]he test for venue under § 1391 looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action." *Robillard v. Knutson*, No. 24-CV-1077-JPS, 2025 WL 1895986, at *6 (E.D. Wis. July 9, 2025) (internal quotations omitted).

Not only did this District reject the Defendant's argument, but the court also directly called the *PKWare* authority into question stating, "the court in *PKWare* relied on an Eighth Circuit case to support this assertion [that only a defendant's contacts are relevant]—a case that is against the greater weight of authority." *Robillard*, 2024 WL 1895986 at n. 5. Additionally, since the *PKWare* decision, courts within the Seventh Circuit have identified a circuit split as to whether only a defendant's contacts are relevant for purposes of venue. *Id.* at *6. To date, the Seventh Circuit has not expressly resolved this issue, however, "the majority of the circuits that had weighed in on the

13

question held the latter [rejecting a defendant-centric contacts analysis.]". *Id.* (citing *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002)).

Further, although the Seventh Circuit Court of Appeals has not directly commented on the above circuit split, the Court of Appeals has upheld district court findings where venue was supported solely by the plaintiff's contacts with the forum. *Robillard*, 2025 WL 1895986 at * 6 (citing *Wade v. Farmers Ins. Grp.*, 96 F.3d 1450, at *1–2 (7th Cir. 1996)). As a result, courts within this District have concluded that focus on a defendant's contacts without a holistic review of all events giving rise to the cause of action amounts to legal error. *Id*. Thus, the Defendant's contention that only its conduct is relevant misstates controlling law and should be rejected.

In a final effort to challenge venue, the Defendants urge this Court to dismiss, "because a substantial portion of the events leading to this dispute occurred in Iowa." (Def. Br. p. 4.) Although the Plaintiff disputes this contention, the notion that Iowa may have substantial contacts is immaterial to the present Motion. As this District has repeatedly instructed, there may be several districts that qualify as a situs of such 'substantial activities' however if the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so.'" *Dixon*, 460 F. Supp. 2d at 936 (quoting *Rich–Mix Products, Inc.*, 1999 WL 409946 at *1). Regardless of whether Iowa were deemed to have more contacts, venue may nonetheless be proper in the Eastern District of Wisconsin so long as "a substantial portion of the events occurred" in this forum, even if not the majority. *Id*.

Ultimately, the Defendants' brief is premised on an incorrect legal assumption that only defense contacts are relevant and that venue is only appropriate in the forum with the most substantial contacts. These fundamental misconceptions improperly narrow the applicable legal

standard and ignore the substantial, claim related, contacts of both parties within the Eastern District of Wisconsin which render venue appropriate in this case.

II.       **In the Alternative, This Court May Exercise Pendent Venue Over Any Claim Which is Not Independently Venued in the Eastern District of Wisconsin**

Even if venue were not independently proper for each claim before this Court, the pendent venue doctrine allows all claims to proceed where at least one cause of action is properly venued, so long as they arise from the same nucleus of operative fact. *See Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 790 (E.D. Wis. 2003); *Gen. Foods Corp. v. Carnation Co.*, 411 F.2d 528, 531–32 (7th Cir. 1969)(stating that multiple claims on a single patent all relating to same subject matter were one cause of action); *Kramer v. Pittstown Point Landings, Ltd.*, 637 F.Supp. 201, 205 (N.D.Ill.1986)(stating that when four counts encompassed one transaction and alleged several grounds of relief, venue was proper over the fourth count when it was proper over the three principal counts).

Here, the Plaintiff's claims all stem from the same factual foundation and transaction; his engagement of Defendants to conduct a marine survey and the resulting representations and deliverables that followed. Both the contract and tort claims turn on whether Defendants performed in accordance with their representations and whether Plaintiff was harmed by relying on those representations. Under these facts, litigating the claims together ensures consistency in fact-finding, avoids piecemeal litigation, and promotes efficient use of judicial resources.

As recognized in *Estate of Moore v. Dixon*, courts often exercise pendent venue when claims are so interrelated that separating them would lead to duplication of effort and the risk of

15

inconsistent judgments. *Dixon*, 460 F. Supp. 2d at n. 1.[5] Here, there are seven claims alleged with the majority, six of the seven, being tort claims. As discussed above, the tort claims are each properly venued in this District as it is the location of the injury, the location where representations were received, and the location of reliance. The Defendants' briefing offers no argument on these points nor the correct legal standard to suggest that six of the seven claims are somehow not properly venued in the Eastern District of Wisconsin.

Where the clear majority of the issues are properly venued in this District, even if some claims are ultimately not independently venued in this District, all claims should remain before this Court under the pendent venue doctrine.

### III. Defendants Are Not Entitled to Costs or Attorney's Fees

Finally, the Defendants request costs and attorney's fees without citing any statutory basis. Under Rule 54(d)(1), only costs, not attorney's fees, are generally awarded to the prevailing party. The Defendants have not established that venue is improper and therefore are not entitled to any fees or costs. However, even assuming *arguendo* that the Defendants were the prevailing party, no statutory or contractual authority authorizes their request for attorney fees. Accordingly, the request should be denied.

## CONCLUSION

---

[5] As the Court stated: "based upon the allegations set forth in the complaint, and drawing all reasonable inferences from such allegations in the plaintiff's favor, I am persuaded that the plaintiff's receipt of and reliance upon the aforementioned letters here in the Eastern District of Wisconsin are sufficiently connected to the plaintiff's causes of action for breach of contract and breach of fiduciary duty so as to render venue proper in this district. Indeed, I do not see how the letters could not have been a part of the "historical predicate" of these claims. And, even assuming, *arguendo,* that venue is improper in this district with respect to the breach of contract and breach of fiduciary duty claims, I would still find venue to be proper over all of the plaintiff's claims pursuant to the "pendent venue" doctrine. This is because the plaintiff's misrepresentation claim is the plaintiff's primary claim and the breach of contract and breach of fiduciary duty claims share a common nucleus of operative fact with the plaintiff's misrepresentation claim. *See* 14D Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure,* § 3808 (2006)(stating that "many courts follow the rule that if venue is proper for the 'principal' or 'primary' claim, then venue is proper for any subsidiary claim that shares a common nucleus of operative fact with the primary claim")."

Because a substantial part of the events giving rise to Plaintiff's claims occurred in Wisconsin--including contract formation, numerous communications relating to performance, receipt of misrepresentations, reliance, and economic injury--venue is proper under 28 U.S.C. § 1391(b)(2) and the Defendants' Motion to Dismiss should be denied in its entirety.

Dated this 29th day of July, 2025.

Respectfully submitted,

By: */s/ Thomas J. Lonzo*
Thomas J. Lonzo
WI State Bar No. 1000826
*Attorneys for the Plaintiff*

**THE ROSE GROUP, S.C.**
1134 N. 9th Street, Suite 220
Milwaukee, WI 53233
Phone: (414) 274-1400
Fax: (844) 273-1311
Email: tjl@rosegrouplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed electronically on July 29, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

By: */s/ Thomas J. Lonzo*
Thomas J. Lonzo
WI State Bar No. 1000826

17

Case 2:25-cv-00725-NJ   Filed 07/29/25   Page 17 of 17   Document 15